*201 Opinion.op the Court, by
Judge Mills. *
,,, THE complainant below, now,, defendant in error, fill^ed her bill for the purpose of obtaining alimony’ against her husband, on a chargéáhat he had deserted and abandoned her, and would not live with her. The answer ad-vomits t'h&f he left her at his awn house, with every thing • about andMiat,he took uo his residence *202 in another house on the.same farm, with intention to-live / no more with her; and allege^ that he,wá^compelled to this measure for the sake of peace, and-to avoid the effects of her bad (emper, jvhich/bad rendered his life miserable ; and 'that,she had not only annoyed him with Ijer tongue, but J[fad beaten him,with weapons; that before Jeftherjuhe called upon two or ¡three of his neighbors, and caused them to set aside for her use, what they sup-. Posec^ sufficient for her. maintenance for nine months; had furbished hqr with those articles allowed her by these neighbors, and many others, and’had furnished her with wood and other necessaries, and itj-tended always to keep her decently, if permitted to do* so-without compulsion.
mony, cannot, under our statute, be properly commenced, until a year after the a-Asuit for ali- ... banilonmont; thfliiinsnot amended, so a« to show continued a year & more, ho decree can cedPr°n0Un"
of chancery have, in this country, au-creo alimony! independent ol the act assembly.
It seems, that where the ■the wife is^so unkind and inhuman to-husband01, s to justify his abandoriing fcf'ts ^if ‘°\~ to ahmony^at common law.
The court decreed to the complainant two liundr|$l dollars per annum as alimony.
When both hill and answer were tiled and issue was joined in the cause, one whole year had not elapsed since the first abandonment; but the year was complete ^ rendition °f the decree. It is, therefore, coutend-°d that this decree cannot be sustained under the statute, and that without the statute, a court of equity can Srant no relief in the premises. It is insisted, on the °Ihev hand, that the decree is good under the statute, as the cause of action was complete before the rendition of ^,e ^ecre<?-> and if this should not be the case, that independent’of the statute, a court of equity has jurisdic-^on fhe matter, and can give the appropriate ielief.
It will be admitted, that the trial of an issue in a court of common law, determines upon the controversy as it slo°d at the commencement of the action, except such issues as are formed on the plea o{puis darreign contr- and that if there was at the commencement of suit, no cause of action, it is fatal, however strong it may have become afterwards. But the rule in a court of equity is somewhat different. The chancellor is not down to such strictness, as to refuse relief in all cases where the bill was tiled prematurely. Redress may sometimes be given in such case, and the costs of suit may be imposed upon the complainant, which accraed before the cause, of complaint had arrived maturity, asa penalty upon life haste. Still, however, ^ *s necessaiT by an amended bill, or new pleadings, to s*:a^e the supplemental events, which have competed the cause of suit, in order that the chancellor may know from *203 pieadíng^ffeafsu.cK^events. ..have ' reálíj^lfánspired; •'for the dectdpi of the tlianceilor settles- thé%atters m Mitest as they stood at the t|ipe t'h'g-'dssrie'wálisitaítié.fl, h,' tijen, such' subsequent ev'eqts gre! ;notT sgt' omyb-y n4$cpleadings, except perhaps in the casg-,$r accruing instáímcnt4on' mortgages, or suchlike cases-,,- - ought not to be granted, although the te^imony»may prove the éáuse of complaint complete. As, then, the abandonment for one"- year might or, might not have ....been complete at the rendition rof this decrpe, as it might have eéhsbd by’his return, fron}- any thing whyct)’'hp-pears in- the pl&dings, and tlieie<.is no showing that it* really bad transpired, it follows.' that' tijejeomplainant below cannot have relief under the ’hjwffirth.r.and' that her bill must fail, unless the chancel-íorhas jurisdiction independent of, or had-it beforefhe statute. "
it i$''oertíünr that in such tí?2 vohAMdiy supported ^ohas ce’*'^' to jivo her, she caar deniThe" statute,
On. this question, elementary writers place the p.ow-ei of decreeing alimony, in general terms, among’%ie powers of the chancellor. But when the adjudged ca-' ses are examined, it is found that generally some, peculiar circumstances must exist to authorise such degree.Thus, it is said, that there must be an agreement'be--«isvéen. the parties that alimony should be allowed, or'a. previous sentence of an ecclesiastical court, sepafaifqjj the parties a mensa et thoro, from which an agreement Would be’'implied, or the chancellor would nqtifeter-fere; that is, he would not take up the matter ab origíne, settle the separation and grant alimony. As to decreeing a separation, it seems clear that the power ¡wás ne-^ ver’eonsidered in England to belong to the chancellor; ftfct to the ecclesiastical courts. And it has- been the •-mbar understanding since the commencement, of our government, in every state, so far as is known to the court, that no power of granting divorces,-either’a, mensa ct ikoro, or avinado matrimonii, existed in any tribunal until it was granted by legislative authority, and-that the marriage contract, without such grant, could not be annulled, either in whole or in, part. But sup„-.iose the casé fcf abandonment by a husband, and tii-át Ufe separation is complete without any sentence, and' that' the wife is left to'thmhumanity of the world; without support, has the chancellor, without the staruffc, or ^Si-n case’s^bt embraced--by it, no-authority to .direct-a Jtórtion of the husband’s estate to he set 'apart'for th,e *204 support of the wife, leaving the marriage contractas, obligatory as ever? This is a question different from the power of separation, and deserves further consideration. It is true, that the court of chancery would always grant' this;.after the spiritual court had acted as to.the separation, and before, where there had been an agree-njenipbut without such previous sentence or agreement, could it never interfere? On this point the English authorities are contradictory, and, indeed, somewhat irreconcileable. Cases during the usurpation, went that far; but in answer to these, it is s&id that the< jurisdiction was .expressly givqp, and that such doubts afterwards‘’existed of the'validity of these decrees, that ' they were confirmed by -Parliament. In Head vs. Head, 3 Atk. 547, Lord Hard wirk|fo-' serves, that he could find no decree to compel* h husband to pay a separate maintenance to his wife, unless upon an agreement between them, and even then, unwillingly. This dictum of that able chancellor, does seem measurably since to have controlled this question. But notwithstanding such high authority, it is evident - that the courts had decreed alimony in cases where the spiritual court had previously' decreed a separation. Such are the cases of Nichols vs. Danvers, 2 Ver. 761, and Oxenden vs. Oxenden, 2 Ver. 493. Besides, in the cases of Lashhrook vs. Tyler, 1 Ch. Rep. 24, Williams vs. Cotton, 2 Ver. 752, Watkins vs, Watkins, 2 Atk. 96, alimony was decreed where there appears no sentence of separation or agreement, and m at least two of these cases, it certainly appears there was neither. In some other cases, where the existence of an agreement was relied on, the court only used it as a pretext for juris** diction, and did not confine itself to*'the terms of tile agreement; but departed from it in making such allowance as was equitable. Between such conflicting authorities, we consider ourselves at liberty to choose and deride according to the principles of equity and reason of the case.
It is clear, that strong moral obligation must lie on every husband, «'ho has abandoned his wife, to support*^ her. The marriage, contract and every principle binds^ him to do this.1 To fail to dolt, is a wrong acknowledged at common law, though the law knows no remedy, because there the wife.cannot sue the husbálfl. Bufc-jf in equity the wife can sue the husband, and it is the pro- *205 üffde of a court'of equity-tchafford remedy where con- ■ seiénee and ía# acknowledges^ a right, bu-t'j^iws no remedy. Why; then, , should the chancellor shriídji^at this.case and refuse a remedy. It is. oxiden!', thatttife_ arose in England for fea.r of intruding upon the ground',^ occupied by -theecclesiastical cou rts. These courts were incorporated with their government, gpd as much^composed apart of the civil organization of that country, as our county .courts do here; and-their sentences on subjects within their jurisdiction, was as obligatory and as much noticed in their civil courts, as the decisions of other courts. And, indeed, they keptjand held jurisdiction of sope matters purely temporal, ff became necessary to draws the linecf demarcation around them, and restrain d^Mftibunals from occupying the same ground, and to r^pe'io entertain concurrent jurisdiction, leaving the party to apply there for his or her remedy. Butiñ this country, v$e have no such courts, or boundaries aroun,4 them, to notice. The reason, then, for refusing the jurisdiction of such cases as are peculiarly, temporal, and particularly this case, which lies within the compass of j^.'ihe'general grant to the chancellor, has here ceased, and 'cidts not exist." And grievous wrongs might exist-wjth-outremedies, until the legislature interfered, which-is agí^nst a well known principle ripened into a maxim,*»* Indeed, probable cases might be supposed and known,•• where, in rone year, absolute starvation might be the’ consequence of abandonment and withdrawing the means of support, if the chancellor has no power to in- ' terpose.
Wé, therefore, conceive that the chancellor, before th|||tatute, and since, in cases not embraced by it, which haw strong moral claims, had and has jurisdiction to « decree alimony, leaving the matrimonial chain untouched, and'that those authorities which decide in favor of siich jurisdiction, ought to prevail.
. This.conclusion brings us to the merits of this case, and imposes upon us the necessity of inquiring whether the decree below is right.
jff-The abandonment is confessed in the answer, and-the ^mention made out in proof, and the fortune of the defendant, below is ample, and no-abandonment or le#d conduct is shown on the part ofthe wife, tobar her.right*; ttiit'sti-llh^must be-confessed thatih.e'conduct of the-is not without strong palliating circumstances. • *206 and that the. claim of the complainant is i\gt very mérito? ri°us- ■ Her temper is' insufferable,- andher Conduct to her husband and his children, has'been aggravating and provoking;- and in oné'case she appears <o have resorted to weapons^ and to have injured him considerably» And often when such violence was not resorted to, conduct calculated to wound his sensibility deeply, appears to have been practised by her. Of her' improprieties she seems sometimes to have been sensible,--and then to have made concessions and promises of amendment.-Blit these resolutions were soon broken, and nt> reformation succeeded; but soon a repetition of the same1'of-fences. Upder such circumstanced, we can scarcely see what else the husband could do, than to retire from her company, as it became a torment instead-o'f dljhjm gal happiness. Without deciding, however, whether he was or was not completely justifiable, we are certain that the bare act of his taking a differentriiouse near-at hand, is not sufficient to induce the chancellor to decree. alimony. Something more is necessary. He must have withdrawn the means of support from her, or have refused to provide for her, before he could.,be, liable to a decree. He has done neither. It is hot shown, even during the progress of the cause, that he refused her the means of support, or disturbed hér in the occupancy of the dwelling in which he had left her. Before the bill was filed, he did set apart what, in the opinion of two or'three of his neighbors, was sufficient for.her maintenance for a considerable length of time, and before this time expired, she filed her bill. It is insisted that in this provision there was a deficiency of some small necessary articles; but it does not' appjear that she was without or needed these articles» It is also in proof, that this provision was assigned by these* neighbors as adequate-, taking into consideration what her own labor would produce, and hence if is contend-, ed, that it was too scanty, and ought to induce the chancellor to interfere. We do not think so. If the parties had lived together, notwithstanding the competent fortune of the husband for the purposes of -living, industry, was necessary to take care of, if not to increase, theiri means of living; and however far a husband,,- who was guilty-of causeless abandonment or of cruel treatment, might be bound'to extend the provision for$a desertdtl wife,'we do not conceive, in a case where she'hasbggn *207 (because of the*sep&ratiofi¿ tbfot she ought- to be raised,-, bjs .means of Ane- hjisbknd, ,aboVe,,‘-»or *-be .exceed from that kind of labor .which suits -her- sex. -We; ithereFo'rT^,-coucevve,.that sh@fwas;.in-this ínstaoste, too hdgtjr.-to have thebepefit of¡¡.fhe,'átatute.,; and that without the .statute, she has not shown a case which ought to' indqcp the chanceLfor-to interfere... , « (
The*ecree must, therefore, be .reversed,- and .the cause be rpmanded*with-.directions to the court below to^ismiss the bill.; but without costs in either court,' as ' irnfavortofthe-hus-ban^-againstthe wife, cannot be given.