# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00794-SCT

*GRACE CHAPEL*

*v.*

*MICHAEL ANTHONY CHAPEL*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/9/2001 |
| TRIAL JUDGE: | HON. PAT H. WATTS, JR. |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | KEITH ROBERTS |
| ATTORNEY FOR APPELLEE: | PRO SE |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 07/01/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER AND COBB, P.JJ., AND GRAVES, J.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Michael Anthony Chapel filed for divorce from Grace Chapel in the Jackson County Chancery Court, and in May 1996, the chancellor denied the divorce, but awarded separate maintenance and custody of the two minor children to Grace. Michael, on active duty with the U. S. Navy at the time, subsequently established residency in Virginia, and in April 1997, he obtained a divorce there, although the divorce decree contained no determination of spousal support, equitable distribution, child custody or other such issues.

¶2.     During the next five years, numerous motions were filed by both parties, alleging contempt, and seeking modifications and continuances.  Hearings were set, continued, and conducted, all in the original

case filed in the Jackson County Chancery Court. In August, 2000, the parties announced to the chancellor that they had reached agreement regarding child custody, support, distribution of property and all other matters before the court. However, the order which detailed the terms of their agreement was not signed by the chancellor and filed until January 2001. The judgment modified the terms of the separate maintenance agreement[1], including the division of the parties' property. Grace refused to sign as approving that judgment and she subsequently filed a M.R.C.P. 60(b)(1) motion for relief from the judgment on the grounds that the agreement was the product of fraud and misrepresentation. The chancellor denied the motion.

¶3.     Aggrieved, Grace filed this timely appeal raising two issues: (1) does the Virginia divorce terminate the Mississippi separate maintenance action by removing subject matter jurisdiction, thus precluding modification after the divorce, and (2) are the issues decided in the May 1996 judgment of separate maintenance res judicata and cannot be re-litigated in the divorce action. Finding no error in the chancellor's judgment, we affirm.

## FACTS

¶4.     Michael and Grace were married in 1984, early in his career with the U. S. Navy. Two children were born of that union. For the first ten years of marriage, all seemed to go well, although Michael was away from home for long periods of time on sea duty. In late 1994, Michael requested, and Grace agreed, that they would jointly file for divorce on the ground of irreconcilable differences, in the Jackson County

---

[1] The record reveals that no formal amendments were made to change the term "separate maintenance" in the continuing Mississippi action, either in existing documents or those filed subsequent to the Virginia divorce. In this opinion we use the term as it was used by the trial court and parties during the course of the litigation. As this Court said in *Weiss v. Weiss*, 579 So. 2d 539, 542 (Miss. 1991), in a very similar set of facts and circumstances, there is nothing inherent in the substance of the claims to prevent the separate maintenance action from being converted to one for alimony or support. See discussion infra.

chancery court. However, Grace realized that she did not want a divorce, and when Michael returned from sea duty and learned that nothing had been done toward finalizing the divorce, he filed a new complaint for divorce on the grounds of cruel and inhuman treatment and alternatively, irreconcilable differences. Grace filed a motion for temporary custody and support, and subsequently answered the divorce complaint and filed a counterclaim for separate maintenance.

¶5. Following a hearing in May 1996, the chancellor found that Michael had not met the burden of proof for a divorce on cruel and inhuman treatment, and that Grace did not want a divorce and believed that the marriage could be reconciled, so the proof did not support granting a no-fault divorce. Instead, the chancellor awarded separate maintenance in the sum of $900 per month for Grace and the two minor children (then ages 7 and 3) and granted temporary custody to Grace after full consideration of the *Albright* factors. He also provided for certain specific financial needs of Grace and the children, and awarded Grace use and possession of the marital home. Michael's motion to reconsider was denied on March 15, 1997.

¶6. In April 1997, Michael obtained a divorce in Virginia, on the ground of having lived separate and apart without any cohabitation and without interruption for a period of more than one year. Although Grace claimed to have no actual knowledge of this divorce action until after it was final, there was service of process by publication sufficient to obtain jurisdiction in Virginia. The Virginia divorce decree denied spousal support to Michael, reserved Grace's right to spousal support and equitable distribution, and transferred matters relating to the custody, visitation and child support of the minor children to the Juvenile and Domestic Relations District Court of the City of Norfolk, Virginia.

¶7. In August, 2000, Grace and Michael agreed to a settlement of their various claims against one another in a hearing before the Mississippi chancellor, and the judgment from which this appeal is taken was

3

entered on January 9, 2001. The chancellor denied Grace's subsequent M.R.C.P.60 (b)(1) motion for relief on April 12, 2002. Aggrieved, Grace timely appealed. Concluding that there is no merit to her claims, we affirm the Jackson County Chancery Court.

## ANALYSIS

¶8.     This Court will not disturb a chancellor's judgment when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. ***Townsend v. Townsend,*** 859 So. 2d 370, 371-72 (Miss. 2003) (quoting ***McBride v. Jones,*** 803 So. 2d 1168, 1169 (Miss. 2002)).

¶9.     As a preliminary matter, we note that no brief from Michael Chapel is before this Court in this appeal. We have described the alternative actions which may be taken by the Court when an appellee has not filed a brief. ***May v. May***, 297 So. 2d 912 (Miss. 1974). Recently we described the alternatives:

> The first alternative is to take the appellees' failure to file a brief as a confession of error and reverse. This should be done when the record is complicated or of large volume and "the case has been thoroughly briefed by the appellant with apt and applicable citation of authority so that the brief makes out an apparent case of error." ***May v. May,*** 297 So.2d 912, 913 (Miss. 1974). The second alternative is to disregard the appellees' error and affirm. This alternative should be used when the record can be conveniently examined and such examination reveals a "sound and unmistakable basis or ground upon which the judgment may be safely affirmed."

***Miller v. Pannell***, 815 So. 2d 1117, 1119 (Miss. 2002). Grace Chapel failed to "make out an apparent case of error," and after examination of the record we conclude that there is ample ground upon which to affirm the chancellor's judgment.

> **I. Does the Virginia divorce terminate the original Mississippi separate maintenance action by removing subject matter jurisdiction, thus precluding modification after the divorce?**

4

¶10. The initial court action between Michael and Grace occurred in the Mississippi chancery court in 1995, when Michael filed for divorce, and Grace counterclaimed for separate maintenance. The chancellor denied Michael's divorce and granted separate maintenance to Grace in 1996, and at that time addressed custody, monetary support for Grace and the children, and other property matters. Michael, who was living in Virginia at the time, then obtained a divorce in the Virginia court in 1997, but the Virginia court order did not include any adjudication of spousal support, child support, equitable distribution, child custody nor any other matters beyond the divorce itself. Subsequent to the Virginia divorce, the Mississippi chancellor entered two judgments modifying the terms of the original judgment, after conducting hearings and obtaining the consent of Michael and Grace. Grace now argues that the chancellor did not have subject matter jurisdiction over the action after Virginia entered the final divorce decree, basing her argument on the premise that a final divorce decree ends separate maintenance.

¶11. Separate maintenance jurisprudence has evolved interestingly through the years. In 1874, this Court established that it was a remedy, within the jurisdiction of the chancery court "to compel the husband to support the wife until he shall restore her to his bed and board." *Garland v. Garland,* 50 Miss. 694, 715 (1874). The Court ruled that a subsequent divorce was a material change to warrant modification of a separate maintenance decree. *Landrum v. Landrum*, 498 So. 2d 1229, 1230 (Miss. 1986). In a modern case which is very similar to the present case, this Court held that a wife's claim for separate maintenance was no longer proper since a divorce had been previously granted, but went on to affirm the trial court's judgment of alimony because the separate maintenance action was properly converted to, and tried as, a claim for alimony. *Weiss v. Weiss*, 579 So. 2d 539, 541-42 (Miss. 1991).[2] However, given

---

[2] Based on the Court's holding in *Landrum* and *Weiss*, some commentators have suggested, under Mississippi law, that the onset of reconciliation or the entrance of a divorce decree renders a

that neither party in the present case made formal objections to the chancellor's authority to modify the original separate maintenance judgment after the Virginia divorce was granted, it is not necessary for the Court to reach the issue of whether a divorce decree, particularly a foreign divorce decree, terminates a domestic court's order of separate maintenance. A review of our holdings in *Landrum* and *Weiss* reveals that this Court must affirm the chancellor's rulings on the law in the present situation.

¶12.     In *Landrum*, this Court found no merit to the appellant's assertion that an earlier decree of separate maintenance barred relitigation of issues presented in a new suit for divorce.  This Court held that a divorce, obtained subsequent to a separate maintenance decree, was proof of a material change in circumstances sufficient to warrant a modification of amounts awarded in the separate maintenance decree. *Landrum*, 498 So. 2d at 1230.

¶13.     In the present case, the chancellor entered the original separate maintenance judgment on May 31, 1996.  Virginia entered the final divorce decree on April 25, 1997.  The chancellor entered judgments modifying the original judgment on August 7, 1998 and January 9, 2001 at the petition of Grace and Michael.  Similar to *Landrum*, the chancellor  modified the judgment at the request of the parties and subsequent to the entrance of the divorce.  The entry of the divorce decree did not terminate the chancellor's authority to modify the existing judgment which provided for support for Grace and the two children,  possession of the marital home and custody of the children. Once petitioned by the parties, the divorce qualified as a material change in circumstances subsequent to the original judgment, which vested the chancellor with the authority to modify it.

---

separate maintenance order ineffective.  *See* Hand, Mississippi Divorce, alimony & Child Custody § 2-12 to § 2-13 (4th ed. 1996); Jennings et, al., Mississippi Divorce Practice 25-26 (Professional Education Systems, Inc. 1988).

¶14.    In *Weiss,* the husband filed for a divorce in Louisiana in November 1988. *Weiss,* 579 So. 2d at 540. In December 1988, the wife filed an original complaint for separate maintenance in Mississippi, and she never formally amended her complaint. In June 1989, Louisiana granted the divorce, reserving the wife's right to alimony. Mississippi subsequently granted the wife equitable distribution of the marital assets and alimony. "Neither party contested the validity of the Louisiana divorce decree. Also, both parties conceded the chancery court's authority to divide their property rights." *Id.* Also in *Weiss* the Court considered (1) whether, after entrance of a foreign divorce decree, a Mississippi court had jurisdiction to determine alimony and (2) whether a court could properly award alimony when the complaint was for separate maintenance and not alimony. *Id.* at 540-41. The Court answered both inquiries in the affirmative, holding that "there is nothing inherent in the substance of a claim for separate maintenance to prevent parties from implicitly or tacitly amending the complaint at trial to become a claim for alimony." *Id.* at 541.

¶15.    Further, the Court noted that the foreign divorce decree reserved the issue and that the parties met Mississippi's statutory requirements for personal jurisdiction. *Id.* at 540-41. Based on these facts, the Court held that the chancery court's exercise of jurisdiction was proper. *Id.* at 541. Today we reach the same conclusion: the Jackson County chancery court continues to have jurisdiction in what originally was the separate maintenance case, but which converted to one for alimony and other claims compatible with divorce actions, after the date of the foreign divorce.

     **II.    Are the awards to Grace Chapel in the original separate maintenance action now res judicata, thus precluding modification?**

¶16.    In deciding this issue, this Court noted in *Weiss* that the wife's action could be converted to a claim for alimony, without a formal amendment, so long as there was no bar. The Court further held that there

7

was no inherent bar to the conversion of a claim from separate maintenance to one for alimony and that the parties waived any procedural bar. *Id.* at 541-43. Regarding the inherent bar, in *Weiss* we noted that alimony and separate maintenance were the same thing in different situations, and therefore there was "nothing inherent in the substance of the claims to prevent the separate maintenance action from being converted to one for alimony," without the necessity of amending to the pleadings. *Id.* at 542.

¶17.    Regarding the procedural bar, the Court noted that both the Mississippi Rules of Civil Procedure and Title 93 of the Mississippi Code govern divorce actions in chancery court, and that M.R.C.P. 15(b) was directly relevant to the issue presented by the parties. *Id.* In relevant part, M.R.C.P. 15(b) provides "when issues not raised by the pleadings are tried by expressed or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." "A finding that an issue was tried by implied consent depends upon whether the parties recognized that a new issue was being litigated at trial." *Setser v. Piazza,* 644 So. 2d 1211, 1217 (Miss. 1994). In holding that the parties had consented to the chancery court's trial of alimony, the Court noted that the parties stipulated that the issues of alimony had been reserved for the lower court and that the husband put on evidence of fault as a standard for awarding alimony, without any objections. *Weiss,* 579 So. 2d at 542-43.

¶18.    Similar to the parties in *Weiss*, Grace and Michael manifested their consent to the chancellor's modification of the original judgment and division of the marital property on numerous occasions during the years covered in this appeal. There was no surprise or prejudice occasioned as a result of the judge's decision to grant the agreed request of the parties. Although the parties' pleadings were for the contempt of the original judgment, the parties consented to the chancellor's authority to modify and decide issues not resolved by the Virginia divorce, including division of the marital property.

8

¶19.   Based on the Court's holdings in *Landrum* and *Weiss*, we conclude that the chancellor had authority to modify the original separate maintenance agreement subsequent to the Virginia divorce, based on a subsequent material and substantial change in circumstances. The consent of the parties gave the chancellor the authority and jurisdiction to adjudicate issues relating to division of the marital property, without requiring the parties to amend their pleadings.

¶20.   The foreign divorce decree did not terminate the Mississippi chancery court's jurisdiction over the matter, nor were the parties required to file a separate pleading for alimony or division of property once the parties consented to the chancellor's authority to rule on such matters.  We affirm the chancellor's modification of the separate maintenance judgment and denial of Grace's motion for relief from judgment.

## CONCLUSION

¶21.   The Virginia divorce decree did not terminate the chancery court's subject matter jurisdiction. Grace has not presented any evidence that the chancellor abused his discretion or that he was manifestly wrong.  Therefore, we affirm his judgment.

¶22.   **AFFIRMED.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.  DIAZ, J., NOT PARTICIPATING.**

9