## GLOVER *vs.* GLOVER.

1. Where a husband abandons his wife without just cause, and casts her upon society destitute of the means of subsistence, a Court of Chancery, as an original ground of equity, will entertain a bill filed against him for alimony.

2. The Chancery Courts of this State have no jurisdiction of a bill filed against a non-resident defendant, unless "the ground or cause of action, or transaction," on which the bill is founded, occurred within its limits.

Error to the Chancery Court of Sumter. Tried before the Hon. A. Crenshaw.

R. H. SMITH, for plaintiff in error :

1. The wife may maintain her bill upon the abandonment and ill usage of her husband as a bill standing alone on this

ground, and not incidental to a bill for divorce or the execution of a contract to settle. Almond v. Almond, 4 Rand. 662; Purcell v. Purcell, 4 Hen. & Mun. 507; Watkyns v. Watkyns, 3 Atk. 96; Williams v. Callow, 2 Vern. 752; Duncan v. Duncan, 2 Ves. 396, and cases cited; Prather v. Prather, 4 Des. 83; ib. 183; Butler v. Butler, 4 Lit. 202; Thornberry v. Thornberry, 2 J. J. Marshall, 324; Knight v. Knight, 2 Haywood, 101. Modern decisions in England involve the question in doubt there, if they are not averse to the doctrine contended for; but the question has not been decided in Alabama, and reason and justice are in favor of the right. Indeed the right of the wife to file her bill may be deduced as a legal result from the marriage obligation. Suppose the wife have good cause for divorce, but in view of circumstances (many of which of the strongest character and weight might be mentioned) she shrinks from exhibing her bill for divorce—shall it be said she loses the right of support—a *right incident to an existing marriage relation*, not springing up oa a dissolution of the tie. It would seem that the right to the support is strongest while the relation subsists, and he, and he alone is derelict, yet by our own decision on a divorce of the husband for adultery of the wife, alimony will be decreed to the wife, and can it be said that he cannot *be compelled* to support his wife while she is innocent?

2. Nor can it be objected that she is a resident of Virginia, and he has gone to Tennessee. He cannot evade the right to screen himself from discharging the duty by deserting the State of Virginia, placing his funds in Alabama and taking himself to Tennessee. All this was but a fraudulent contrivance to defeat the wife. Besides, I know of no principle which should exclude the wife from suing in our courts. The money in this case should have been ordered to be put at interest, and the interest paid the wife until the husband shall be willing to receive her back, and treat her properly.

F. S. LYON, for defendant in error:

1. If the bill was filed for *alimony* on the ground of ill usage and abandonment on the part of the husband, it cannot be sustained. The complainant was a citizen of Virginia, and the defendant of Tennessee, where the bill was filed, and

33

there is no ground disclosed upon which the court below could take jurisdiction of the cause.

Under our laws the complainant had no right to file a bill in this State for divorce, either from the bonds of matrimony or from bed and board—*alimony* is but an incident to divorce from bed and board, and cannot be recovered, except in case of a judicial separation of the parties, else how could the recovery by the wife be protected or enjoyed by her. If allowed to recover alimony without a divorce from bed and board, whereby she would be placed beyond the control of the husband, and within the protection of the law, the recovery when reduced to money or property would, by operation of law, become the husband's.

It may be that the allegations and the proof on the part of the complainant were sufficiently strong to authorise a divorce from bed and board, but the complainant was not a citizen of this State, and could not therefore file her bill for a divorce in our courts. The bill contains no prayer for a divorce and hence no decree for *alimony* could be made upon it. 2 Story's Com. on Eq. 647, 648; Ball v. Montgomery, 2 Ves. 195, 196; Head v. Head 3 Atk. 550; Legard v. Johnson 3 Ves. 359; Clancy on Married Women, 13, 5 chap. 9 p. 549, 550; 4 Russell, 428.

CHILTON, J.—This was a bill filed by the plaintiff in error against the defendant Bradley S. Glover, her husband, to obtain a decree for alimony. The bill, which is fully sustained by the proof, alleges that the parties were married and resided for many years in the State of Virginia, in which State the complainant still resides; that the defendant treated her most cruelly, and drove her from his residence, forbiding her return, and that notwithstanding he has property adequate to their mutual support, he failed to make any provision for her maintenance, but absconded from the State of Virginia, leaving her entirely dependent and destitute, and a charge upon her friends. It is shown that the defendant has funds in this State, out which the complainant prays that an allowance may be made to her, and the persons who have the funds are brought before the court. It further appears by an affidavit in the record that the husband resides in the State of Tennessee.

The chancellor was of the opinion that the complainant was not entitled to the relief prayed, and dismissed the bill.

The question involved is one, which, so far as I am advised, has never been decided by this court, and I have consequently bestowed upon it all the consideration which its delicacy and importance demand, and which my time would allow.

I think it is pretty clear from an examination of the English authorities, especially those of more modern date, that the claim of the complainant cannot be sustained, if they are to be followed. In that country the courts of chancery have generally refused to entertain a bill for alimony, unless the parties have entered into an agreement that it should be allowed, or a sentence of separation *a mensa et thoro* had been previously passed by the ecclesiastical court. In the case of Head v. Head, 3 Atk. 547, to which we are refered by the counsel for the defendant in error, Lord Hardwick says that he could find no decree to compel a husband to pay a separate maintenance to his wife, unless upon an agreement between them, and even then unwillingly. This dictum seems generally to have been followed, but it may be remarked that this learned chancellor had overlooked the cases in 2 Vernon, of Oxenden v. Oxenden, 493, where the husband by his cruelty having forced his wife to separate from him, the court of chancery decreed the interest of six thousand pounds, a portion settled on the husband for life, to be paid to her, for her separate maintenance until cohabitation; and that the subsequent case of Nickolls v. Danvers, 571, makes a similar provision for the wife, who having been cruelly treated by the husband separated from him, and filed her bill, praying that £3000, which came to her from her deceased mother's estate, might be decreed for her own use and maintenance. So also in Williams v. Callow, ib. 752, the court decreed the interest of a trust bond given for the wife's portion, to be paid to the wife for her separate maintenance, by reason of the drunkeness and extravagance of the husband, and his rude and abusive treatment of his wife. In these cases there was neither a divorce nor an agreement to live separate. See also Lasbrook v. Tyler, 1 Chan. Rep. 24, and Watkins v. Watkins, 2 Atk. 96. In Ball v. Montgomery, 2 Ves. Jr. 195, Lord Loughborough says, he did not recollect any such cases as were cited to him

from Vernon, and he asserts the broad doctrine, that a married woman should not be a plaintiff in a suit in equity for a separate maintenance, and that no court, not even the ecclesiastical court, has any original jurisdiction to decree such separate maintenance, but it can only be awarded as incidental to some other matter. For example, by the Chancery Court, when the wife applies upon a supplicavit for security of the peace against her husband; (but this ground of equitable interposition is denied by the modern writers—Roper, Husb. & Wife, 309; Clancey's Rights, &c. 454–5) and by the ecclesiastical court, when the wife libels the husband *propter sævetiam*, or by reason of his desertion, ib. 549. Mr. Fonblanque in his treatise on equity, vol. 1, p. 94, maintains the doctrine "that a wife may have a separate estate from her husband as by agreement or by decree for ill usage, or alimony; ib. 104, 105, where the cases are collated. The doctrine of Ball v. Montgomery, *supra* has been generally followed, as settling the law in England, (see Stones v. Cook, 7 Sim. 22, and Vandergucht v. De Blaquise, 8 ib. 315,) but seems hardly reconcilable with the case of Duncan v. Duncan, 19 Ves. 394, which seems to favor a different doctrine. So stands the law in England, and since her learned chancellors have not been able to reconcile their own decisions, we feel that we shall not be wanting in respect for them in adopting a rule of decision for ourselves, which we conceive to be more consonant with an enlightened equity, and with the fundamental principles and maxims upon which the jurisdiction of our courts of chancery is based.

No one will deny but that the husband is bound by the strongest obligations, resulting not alone from the contract of marriage, but founded upon the highest moral consideration, to support his wife. And if it be true that the law, as well as enlightened conscience, creates this obligation, and no court can enforce its performance or compensate for its most cruel and flagitious violation, then indeed has one class of cases been found, which falsifies the boasted maxim, "that for every wrong there is a remedy, and for every injustice an adequate and salutary relief." The learned commentator upon equity jurisprudence, Mr. Justice Story, after reviewing the various adjudications of the English courts, remarks, "In America,

a broader jurisdiction in cases of alimony has been asserted in some of our courts of equity, and it has been held, that if a husband abandons his wife and separates himself from her without providing any reasonable support, a court of equity may, in all such cases, decree her a suitable maintenance and support out of his estate, upon the very ground that there is no adequate or sufficient remedy at law in such a case," and then adds his own view, "*that there is so much good sense and reason in this doctrine that it might be wished that it were generally adopted.*" 2 Story's Equity Jurisp. § 1423,—4th edition.

The case referred to in support of the text, is Purcell v. Purcell, 4 Hen. & Munf. 507, which fully sustains it. In that case the bill was filed to obtain alimony. It set forth the marriage of the parties—that without any impropriety on the part of the wife, the husband had separated himself from her without providing her the means of support ; that with all her endeavors, she had often been without the necessaries of life, and that his knowledge of the fact instead of exciting even compassion, had caused only contempt and insult, and that she had been compelled to support upon the charity of others. Wherefore she prayed a comfortable support to be decreed her out of her husband's estate, which was adequate, and for general relief. The chancellor said, "if the jurisdiction of this court were now to be settled upon English precedents, there might be some doubt about the question, from the cases as brought into one view by Mr. Fonblanque, but I shall leave this clashing of English judges to be reconciled among themselves, and take up the question upon first principles." He then proceeds to derive the jurisdiction of the chancery court over the subject of alimony, not as incidental, but as an orinal ground of equity, in cases where the right to a maintenance exists, and the law affords no remedy, and to award an inquiry into the master as to the defendant's property ; which being reported, he decreed an annual allowance of three hundred dollars to be made to the wife, with liberty to each party to apply to the court to increase or diminish it, as circumstances should in future make it proper, which provision should continue no longer than he is willing to restore her to the comforts of bed and board, and give satisfactory assurance for her

enjoyment thereof. To this case is appended a note, which states: " after the decision of the case by the chancellor, the defendant's counsel made application to the Judges of the Court of Appeals for leave to take up the case to that court, by appeal, which they *unanimously refused*, and expressed themselves perfectly satisfied with the decree upon the merits; so that the doctrine of alimony may now be considered as settled."

The decisions in the State of South Carolina have been in conformity to the doctrine settled by the Virginia Courts in Purcell v. Purcell. In Jelineau v. Jelineau, 2 Des. 45, the court interfered to protect the wife, who had been compelled by the ill treatment of the husband to leave him, although he made an offer to receive her back again, it appearing the offer was made merely to avoid the maintenance sought by the bill and to elude the justice of the court. She was decreed to be entitled to maintenance according to the fortune of the husband, whose circumstances were directed to be ascertained by the master. The chancellor says, if there were no precedents for such proceeding, the court would make one. So also in Prather v. Prather, 4 Des. 33, the very learned and lamented chancellor (Desaussure,) summoned the energies of his powerful intellect to sustain the doctrine that if the wife is ill used, and driven from home by her husband, she is entitled to the protection of the court in decreeing her alimony proportioned to the husband's fortune, to be paid annually to the wife, until the husband should receive her home and treat her kindly.—See also Devall v. Devall, ib. 79, 94, 167. The decisions of Kentucky are perhaps to be refered to the statute of that State, passed upon the subject of alimony in 1800; but in Lockridge v. Lockridge, 3 Dana 28, it is said by Robertson, C. J., that without the statute, we should not doubt the power of the chancellor, in this State, to decree alimony for such cruel treatment by the husband as would render a separation proper.—See also Butler v. Butler, 4 Litt. 201; 4 Rand. 662; 2 Hayw. 101.

I will, however, not lengthen out this opinion by reference to futher authority, since in my judgment, upon principle, the doctrine contended for is placed by the American decisions above cited upon solid and impregnable ground. But although

in our opinion, the court of equity has original jurisdiction over the subject of alimony, we are nevertheless constrained, by our view of the law, in respect to another point involved in this cause, to deny the relief sought by the complainant's bill.

The husband is a non-resident of this State, and the complainant shows by her bill that she resides in the State of Virginia, in which State the cause of complaint originated. The question then comes up, does the mere fact that the husband has debts due him from citizens in this State, give the court of chancery jurisdiction? We will not undertake now to determine whether, under the act of February 1846, (see pamph. Acts 17) the claim of the complainant is such an "indebtedness" as will entitle her to relief there provided for non-residents having effects in this State. The bill was not filed under that statute, does not comply with its requisitions, and the complainant can therefore derive no benefit from it, even though it authorised the remedy which she seeks, and upon which we desire to be considered as expressing no opinion.

In the heirs of Holman v. The Bank of Norfolk, 12 Ala. Rep. 369, 428, it was held that the proper construction of the act, giving courts of chancery jurisdiction of non-resident defendants, did not authorise proceedings against a non-resident on constructive notice by publication, unless the cause of action, or the transaction on which the bill may be brought took place within the State.—See Clay's Digest 353, § 58. The proviso to the act declares, " that it shall not be so construed as to authorise proceedings against persons residing out of the State, unless the ground, or cause of action, or transaction on which the bill may be brought, took place within this State." In the case above cited, it was said that it was never intended that our citizens should make contracts or acquire rights in other countries and then compel the non-resident defendants with whom they contract to come here and litigate the matter, still less could it be tolerated that when two foreigners have entered into a contract, one should compel the other to come to this State and litigate his title, merely because the subject matter of the contract was here.

This view is conclusive upon the right of the complainant

to maintain her bill in this State against her husband, who resides in the State of Tennessee. We confess this is a hard case upon her, and not without some reluctance, pronounce that the decree of the chancellor must be affirmed.