# HAGERT v. HAGERT.

(38 L.R.A.(N.S.) 966, 133 N. W. 1035.)

**Action to compel wife to support infirm husband.**

1. A separate and equitable action at the suit of the husband against the wife will lie to compel the wife to support and maintain the husband when

---

Note.—The power, in the absence of statute, to decree alimony or maintenance independently of proceedings for divorce is considered in a note in 38 L.R.A.(N.S.) 950. The cases there reviewed show that the view that there is an inherent power in a court of quity to decree a separate maintenance to a wife, apart from statute or divorce proceedings, is constantly growing in favor in American courts, although other courts deny any such inherent power. That equity may decree a separate maintenance to the husband in a proper case is declared in Livingston v. Superior Court, 117 Cal. 633, 38 L.R.A. 175, 49 Pac. 836.

As to allowance of alimony or suit money to husband in action for divorce, see State ex rel. Hagert v. Templeton, 18 N. D. 525, 123 N. W. 283, and cases in note thereto in 25 L.R.A.(N.S.) 234.

The right of the wife to maintain a separate suit for maintenance independent of a suit for divorce is also treated in a note in 77 Am. St. Rep. 228.

amply able to do so, and when she has not been deserted or abandoned by the husband, when he, because of age and infirmity, is unable to gain his own livelihood.

**Action by husband for separate maintenance independently of divorce.**

2. Such an action may be maintained without joining therewith an action for divorce, and the statutes governing alimony in divorce cases do not bar an equitable action for maintenance and support brought by one spouse against the other.

**Action by husband for separate maintenance — jurisdiction.**

3. Such an action for maintenance was cognizable in equity at statehood, under the then prevalent equitable usage, continued under § 103 of our state Constitution as formerly vested, and thereunder the district courts of this state have jurisdiction of separate maintenance actions in the absence of a statute devesting them thereof.

**Action by husband for separate maintenance; proceedure.**

4. In actions of this nature, the practice follows, as far as practicable, the practice in alimony proceedings in applications for alimony pending suit for divorce; and the trial court has the power of granting, on good cause shown, temporary maintenance, counsel fees, and expense money pending hearing and before judgment in the main action.

**Statutory duty of wife to support husband.**

5. Section 4077, imposing upon the wife the duty of supporting the husband under these circumstances, does not declare merely an unenforceable duty, but, coupled with § 4078 of the statutes, grants one spouse an inchoate interest, to the extent of necessary support, in the property, real and personal, of the other.

**Husband's suit for separate maintenance — injunction against alienation of property by wife.**

6. Such an interest is of itself sufficient to vest a court of equity with jurisdiction to fully administer relief to the indigent spouse as against the other; and, where necessary to do so, to prevent the offending husband or wife from defeating the order of the court by alienation of property, a lien may be declared on real property, and, where prayed for in the complaint, injunctional relief against alienation or encumbering the property, real or personal, may be granted and enforced by appropriate order.

Opinion filed November 25, 1911.

Appeal from District Court, Grand Forks county; *Templeton,* J.
Action by Claus Hagert against Emma Hagert. From a judgment for plaintiff, defendant appeals.
Affirmed.

*Skulason & Burtness,* for appellant.
*Geo. A. Bangs* and *Geo. Robbins,* for appellee.

Goss, J.   This is an independent action for permanent alimony
brought in equity and based on the provisions of our Codes as to the
duties and obligations of husband and wife toward each other, and par-
ticularly with reference to §§ 4075, 4077, 4078, 4079, Rev. Codes
1905.   To the husband's complaint the wife demurred, and the matter
is before us with no issue of fact involved.   For our determination
is presented the right of the husband to maintain an action in equity.
against his wife to recover from her as equitable relief his maintenance,
permanent alimony, and this independent of an action for divorce.

A glance at the pleadings is sufficient to convince us that, if such an
action can be maintained, it is certainly justifiable in this instance.
Plaintiff and defendant have been married thirty-one years.   The plain-
tiff is fifty-five years old, and physically unable to work, suffering from
the effects of paralysis.   He is utterly destitute, without means, and
infirm.   His wife, on the contrary, is wealthy, owning property with-
in this state of the value of more than $30,000 with a net annual in-
come of at least $3,000, with no one dependent upon her for support ex-
cept a twelve-year-old son, the issue of said marriage.   Plaintiff has not
deserted defendant, but she refuses him maintenance.   He asks for
support money pending suit to afford him the necessaries of life, and
that his wife be required to make such monthly payments as necessary
for future provision for his maintenance, and also that counsel fees
and expenses of this action be allowed him.   The trial court passed upon
the matter of maintenance pending suit, on the affidavit of the respec-
tive parties, in the same manner as an application by a wife for alimony
pending suit in an action for divorce would be determined.   An allow-
ance was made him of $50 per month pending suit, with $100 for at-
torney fees, from the making of which order defendant promptly ap-
pealed, refusing to make such payments and questioning the authority
of the court to order the same or to entertain the action at all, charging
insufficiency of the complaint to state a cause of action.

The statute in the sections heretofore referred to provides:   Sec-
tion 4075:   "Husband and wife contract toward each other obligations
of mutual respect, fidelity, and support."   Section 4077.   "Duty to sup-

port. The husband must support himself and his wife out of his property or by his labor. The wife must support the husband when he has not deserted her out of her separate property, when he has no separate property and he is unable from infirmity to support himself." Section 4078: "Except as mentioned in § 4077, neither the husband nor the wife has any interest in the property of the other, but neither can be excluded from the other's dwelling." We also have the statutory provisions as to divorce, among them § 4070, providing: "Though a judgment of divorce is denied, the court may in an action for divorce provide for the maintenance of a wife and her children, or any of them, by the husband,"—and § 4071, providing for alimony pending action for divorce. But we have no statutory provision expressly authorizing an action by one spouse against the other for maintenance or support, unless chapter 167 of Session Laws of 1890 is unrepealed.

Defendant therefore insists that § 4077, declaring the duty of the wife to support the husband under the circumstances before us, is merely the declaration of an unenforceable right, for the reason that the legislature has not seen fit to declare the manner of its enforcement; further, that at common law no right of action exists in such a case, and hence until the legislature expressly provides the procedure to enforce the right, the courts are powerless to grant relief; and the husband, to whom the statutory duty is owing, is remediless, and must console himself with whatever comfort he can obtain from his situation, enduring a wrong without a remedy, meanwhile securing his own livelihood as best he may. So defendant eloquently proclaims that the law in its application to this case, notwithstanding the provisions of § 4077, points the way "over the hills to the poorhouse" for the husband, that the wife may continue to miserly hoard her wealth. This is a case of first impression in this state. At first blush, and from other than a careful investigation of the subject, it would seem that courts would be obliged to accept defendant's position as correct. It is in part true that there is no sanction in the common law for this action. More accurately speaking, there is no English common law on the subject. It is true authorities may be found declaring that at common law a husband cannot sue his wife for support. Likewise is it true that case law can be found supporting almost any proposition in divorce and alimony matters one may care to advance and within reason. On the right of the

wife to maintain a separate action for alimony, independent of divorce, and in the absence of statutory authority, courts were once in hopeless conflict, dependent largely upon how they saw the light of the supposed common law, the state of mind from which research was made, and the inclination of the court in the particular case.

Necessarily connected with marriage and divorce no one subject of the law is historically more interesting than the one under consideration, involving as it does marital rights of a personal as well as a property kind. The proper application of the decisions thereon compels their being read in the light of the advance of the rights of womankind from a position of subordination to man to the present plane of civil equality of the sexes in personal and property matters. When so viewed, it is easy to conceive why in England no action similar to this can be found. Under the common law, since it can be said to there exist, the husband was the lord of the manor, with the wife an inferior in all respects. And even to-day in that country the wife is not, in divorce or property matters, on a footing of equality with the husband. Under early English jurisprudence, the wife completely lost her identity after marriage, and husband and wife became one, with the husband the one. And this was true as to property as well as to personal rights growing out of the marriage relation. By virtue of the marriage the husband had supreme control even of the real estate of the wife, and became owner of her personal property. She had no power to contract or control it. She could not sue others except through her husband, much less sue him. He possessed and exercised the means of sustenance, and there could not exist the necessity, as in this case, of a suit by the husband against the wife for support. He had all she possessed, and no necessity for suit existed. Herein lies the reason for the absence of common law on this subject. Can it be said that such a condition can constitute a precedent under the situation before us? Courts may accept decisions coeval with Columbus, but it is only when similar conditions make the reason for the holdings applicable. As a matter of fact, when paralleling conditions, there are certain eras in Rome when Roman law would be more fittingly applied to present day divorce in these United States than any English precedent, which latter is really, when considered with procedure, often without weight under our present system. As illustrating, Rome gave to the world the first body of law on marriage. It was in

Rome that the state first asserted its interest in the marriage relation. It was in Rome, in the later days, that the influence of the Christian religion first gave coloring to the marital laws. It was in Rome that equity was first administered to protect the estate of the wife as against the husband; and it was there, too, that womankind first enjoyed approximately the equality in personal rights possessed to-day under what we are pleased to term our advanced civilization. It was in Rome in her last days also that the divorce became, as many assert it now to be in this country, a national evil; but even in those days the wife enjoyed equal and sometimes superior rights of divorce to those of the husband. To further study the applicability of English precedent in these particulars, let us further digress. England in adopting the civil law took with it the Roman institution of marriage, and much of what that law so prescribed, but at a time when the civilization of the age demanded the mastery of the man and the obedience of the woman, and in general the assertion of superiority of the male over the female. But here is again reflected a racial characteristic modifying the law growth. The English are as a race conservative in governmental matters, never adopting anything tending toward instability or uncertainty. This tendency is always toward system and permanency. They are as much so in domestic and religious matters, and, following such trait, they rejected the idea of divorce, and for centuries no absolute divorce existed. During this period the ecclesiastical courts came into existence, and their jurisdiction over personal (styled temporal) matters growing out of the marriage relation became clearly defined and generally asserted. But such court, so-called, was an adjunct of the Church, with Church and state allied; and in administering to matters arising from the marriage relation there always remained, because of religious zeal for morality, the idea of the perpetuity of the marriage relation; and the vows assumed at the altar were recognized as covenants and enforced to the letter. This was wholly inconsistent with the idea of an absolute divorce. But a divorce a mensa et thoro was recognized as a necessity and gradually became more frequent. Then, too, the English Parliament in recent times assumed to themselves the right, and began to grant absolute divorces. But divorce remained under English law the privilege of the rich until 1857, when the ecclesiastical theory was abandoned, and "the court for divorce and matrimonial causes" created, with power to grant

either a complete dissolution of the marriage, our absolute divorce, or a judicial separation, a divorce *a mensa et thoro,* and also a decree of nullity of marriage, with a Queen's proctor, a public official, authorized to intervene in all cases where necessary to protect the rights of the nation against collusive divorces. See 97 Statutes at Large of United Kingdom; 20 and 21 Vict. 532; and Stat. 36 and 37 Vict. 8 Law. Rep. 194–195, and amendments there scheduled.

We have divorce discussed in Blackstone's Commentaries. See 2 Andrew's Cooley's Bl. Com. p. 383. But it is noticeable that the absolute divorce there mentioned corresponds to our present decree of annulment of marriage; and always prior to that time, except when granted by a religious decree or act of Parliament, an absolute divorce rested upon some cause existing prior to the marriage and recognized as a canonical disability, at the creating of which disabilities as grounds for divorce the ecclesiastical courts became very proficient. And so whatever common law has grown up on this subject has run the gauntlet of a conflict of jurisdiction between English chancery and ecclesiastical courts, as a side issue to matters equitable and temporal so-called, and under force of the necessities peculiar to the case; hence, roundabout procedure or none at all. And it was not until the last century that alimony pending suit was allowed, and then only as an incident to a suit for divorce. So we do not go to England for common law on this subject, but, instead, we may reasonably conclude American holdings have possibly influenced English legislation thereon, the basis for English present day decisions. However, in English chancery courts, whenever it became necessary for the husband to invoke their aid to procure his legal rights and rights of property as against the wife, the same was withheld on the ground that the husband seeking equity must do equity or forego the benefits of the action. And the doctrine was there created that the real property of the wife could be taken in trust in chancery under circumstances demanding it. Then, again, the necessities of trade compelled the fiction at law that, though the wife could not contract generally, she could bind the husband for necessaries, enabling the third party to collect therefor in an action at law against the husband on the theory that a husband by sending her forth destitute clothed her with his credit to that extent.

In this case counsel for the defense have generously conceded that this so-called common-law right exists to the plaintiff. But at English

common law the husband did not enjoy such right to necessaries as against the wife, as she owed him no duty or obligation of support until the enactment of married women's property act of 1882, § 20; 45 & 46 Vict. chap. 25. See also 16 Laws of English by Halstead, § 626; 21 Cyc. 1599. But the courts of America have generally assumed this to be a proper subject-matter to be dealt with by courts of equity, and, in the absence of statute, generally entertain applications for alimony pending suit for divorce as an incident to the equitable divorce relief sought.

The next step in the same line was the recognition by the courts of equity of the right in the wife to, independently of divorce, maintain an action for alimony or support, and procure judgment from the husband similar to that asked by the husband of the wife in this action. As to the right of the wife to maintain such an action the courts of this country are in conflict. The early common-law rule was followed on that question in many jurisdictions and the right denied, the courts conceding themselves powerless to afford relief until statute clothed them with express authority. But gradually the trend of authority turned in favor of the maintenance of such an action. The strongest pioneer case on the subject is Butler v. Butler, 4 Litt. (Ky.) 202, which was followed by Galland v. Galland, 38 Cal. 265, by a divided court, in which case about all that can be said on either side of the subject is covered by the main and dissenting opinions. Shortly thereafter Garland v. Garland, 50 Miss. 695, exhaustively reviewed the same subject, following the cases cited, and Glover v. Glover, 16 Ala. 440, and Prather v. Prather, 4 Desauss. Eq. 33, all of which are authority for the maintenance of an action by the wife independent of statute and separate from an action for divorce.

These cases point out the cause of conflict in the decisions as arising from the reluctance of the England chancery courts to assume jurisdiction of such matters considered by them as more properly within the jurisdiction of the ecclesiastical courts; and that chancery courts in this country, following those in England, refused to take equitable jurisdiction, and this without considering the reason why the courts of England had refused to do so, and without including as part of the common law the procedure of the same class in the ecclesiastical courts. If the term "common law" be used to include ecclesiastical as well as chancery matters, precedent is found in England for such jurisdiction; otherwise not.

We are satisfied that the greater weight of authority follows the holdings
cited in favor of the right to maintain such an action as a matter of
equitable jurisdiction. Such was the better rule at the time of the adop-
tion of our Constitution, in 1889; and in pursuance of the provisions
thereof contained in § 103, continuing the original jurisdiction of dis-
trict courts "of all cases, both at law and equity," the right to maintain
such an action here exists in the absence of statute. Such equitable
jurisdiction was originally assumed in the face of exactly the same ob-
jections as are confronting us in this case; that is, that the moral right
to support was conceded; but it was urged that the common law in its
narrower sense did not recognize such an action, and that until legisla-
tion conferred the right to maintain the action to enforce the duty of
support the courts must keep hands off and decree themselves powerless
to remedy the wrongs existing. In Glover v. Glover, 16 Ala. 440, speak-
ing of this duty, and this objection urged to its enforcement in equity,
the court said: "If it be true that the law as well as enlightened con-
science creates this obligation, and no court can enforce its performance
or compensate for its most cruel and flagitious violation, then, indeed,
has one class of cases been found which falsifies the boasted maxim,
'That for every wrong there is a remedy, and for every injustice an
adequate and salutary relief.'" "So stands the law in England, and,
since her learned chancellors have not been able to reconcile their own
decisions, we feel that we shall not be wanting in respect for them in
adopting a rule of decision for ourselves, which we conceive to be more
consonant with the enlightened equity and with the fundamental princi-
ples and maxims upon which the jurisdiction of our courts of chancery
is based." In Garland v. Garland was urged the right of the wife to
bind the husband for necessaries, and because thereof (herein also urged
as adequate relief) that she should be denied the right to maintain a
separate action for alimony apart from divorce. On this the court says:
"The law's delays are proverbial. The credit of a man stubbornly de-
termined not to support his wife will not feed the hungry nor clothe
the naked. A man might be worth a large fortune, yet so situated as to
defy judgment and execution. The credit of one so disposed would
avail nothing in the market in the way of procuring supplies, as mer-
chants will not part with their goods upon such uncertain security."

The later authorities allow the wife a separate action in equity for

maintenance. See Cureton v. Cureton, 117 Tenn. 103, 96 S. W. 608, carefully reviewing many authorities, and holding that "a court of equity has inherent power, independent of statute, to grant a wife a separate maintenance out of her husband's estate, because of his abandonment of her in cases where no application for divorce is made." This is the rule in Alabama, Arkansas, California, Colorado, Florida, Georgia, Iowa, Kentucky, Maryland, Missouri, Mississippi, Minnesota, Montana, North Carolina, South Carolina, Ohio, South Dakota, Washington, Virginia, and by statute in Illinois, Michigan, and New Jersey (Brewer v. Brewer, 79 Neb. 726, 13 L.R.A.(N.S.) 222, 113 N. W. 161; Wood v. Wood, 54 Ark. 172, 15 S. W. 459; Williams v. Williams, 136 Ky. 71, 123 S. W. 337; Hite v. Hite, 136 Ky. 529, 124 S. W. 815; Parker v. Parker, 134 Ga. 316, 67 S. E. 812; Christopher v. Christopher, 18 S. C. 600; Reifschneider v. Reifschneider, 144 Ill. App. 119; Graves v. Graves, 36 Iowa, 310, 14 Am. Rep. 525; Clisby v. Clisby, 160 Ala. 572, 135 Am. St. Rep. 110, 49 So. 445; Milliron v. Milliron, 9 S. D. 181, 62 Am. St. Rep. 863, 68 N. W. 286; Levin v. Levin, 68 S. C. 123, 46 S. E. 945; Baier v. Baier, 91 Minn. 165, 97 N. W. 671; Dunnock v. Dunnock, 3 Md. Ch. 140; Edgerton v. Edgerton, 12 Mont. 122, 16 L.R.A. 94, 33 Am. St. Rep. 557, 29 Pac. 966; Donnelly v. Donnelly, 39 Fla. 229, 22 So. 648; Dye v. Dye, 9 Colo. App. 320, 48 Pac. 313; Branscheid v. Branscheid, 27 Wash. 368, 67 Pac. 812; Almond v. Almond, 4 Rand. (Va.) 662, 15 Am. Dec. 781), and now granted in Michigan, Massachusetts, and New Jersey by statute. See Meyerl v. Meyerl, 125 Mich. 607, 84 N. W. 1109; Blackinton v. Blackinton, 141 Mass. 432, 55 Am. Rep. 484, 5 N. E. 830; Enslin v. Enslin, — N. J. Eq. —, 37 Atl. 442. Same in District of Columbia. See Shaw v. Shaw, 2 App. D. C. 204. See also 26 Am. Dig. cols. 2854 et seq., and 10 Decen. Dig. under Husband and Wife, §§ 283 et seq., and 21 Cyc. 1598–1603.

In passing we might remark we have not overlooked chapter 167, Sess. Laws (N. D.) 1890, construed in Bauer v. Bauer, 2 N. D. 108, 49 N. W. 418. The Codes of 1895, enacted revision, does not contain chapter 167, Laws of 1890, and on page 1519 of the Codes of 1895 as published, designated as expressly repealed, we find chapter 167 enumerated as repealed; but, on consulting the enrolled and engrossed bill in the office of secretary of state, so enumerating such express repeals, we

do not find said chapter 167 designated as repealed. Whether the enactment of the Codes with said chapter omitted, and the erroneous publication of the Codes claiming such repeal, and acquiesced in by common usage for fifteen years, leaves said chapter 167 in force, it is unnecessary to determine in this action. If it be in force, the statute adds nothing to the power of the court, the same being limited as construed by the opinion in Bauer v. Bauer to procedure only, and there being nothing in the statute inconsistent to the application of the same procedure to the suit of the husband as is therein provided for the wife. The rights of both coming from the common source—§§ 4075, 4077, 4078, of our statutes —in themselves providing said rights are mutual, equal, and reciprocal, the husband is entitled to the same relief as the wife would be if she were suing him for support under said statutes. And the fact that the husband in divorce proceedings is denied alimony does not infer that by analogy, if said chapter 167 of the Laws of 1890 is in force, the husband is excluded on the ground that the providing of the remedy for the wife excludes the use of the remedy by the husband for his benefit. In divorce proceedings the allowance of alimony as incidental thereto depends solely upon the statute, and the provisions of § 4075, defining the relations of husband and wife toward each other and their corresponding duties and rights as to support, do not enter into, modify or enlarge the provisions of the statute as to alimony pending divorce. In other words, the legislation on divorce, with alimony pending suit, temporary and permanent as incidents thereto, is complete legislation on that subject. The power to allow maintenance in an action therefor is a different matter, and in no wise governed by the statutory provisions limited to alimony incident to divorce.

But one further step forward need be taken. Courts have but to apply the reasoning supporting actions in favor of the wife against the husband for maintenance, to actions of the same class brought by the husband against the wife for the same purpose. What can be said in favor of the wife maintaining such an action must surely exist in reality in favor of the husband when the wife, as in the case at bar, is the offending spouse. And authority therefor exists. See Livingston v. Superior Court, 117 Cal. 633, 38 L.R.A. 175, 49 Pac. 836, in which the court applies the rule to a suit of the husband against the wife in which a judgment for support was obtained, and where the wife was held in contempt

for disobedience thereof. That court concludes that, independently of statute, a court of equity in the exercise of its general powers has the authority to entertain an action for maintenance brought by the husband against the wife, and to award such judgment as is necessary to the granting of adequate relief. The statutes of California are identical with all those under consideration.

But our decision need not depend alone upon the principle that this is properly a subject of equitable jurisdiction, independently of statute. Under § 4077 the duty under the circumstances in suit is imposed upon the wife to support the husband, this plaintiff; and under § 4078 it would seem that, coupled with this duty, as inchoate interest to the extent of support is granted the husband in the wife's property under the facts of this case. Else why the provision of § 4078, reading: "Except as mentioned in § 4077 [prescribing the duty to support] neither the husband nor the wife has any interest in the property of the other?" Unless an inchoate interest in property is conferred by this legislation, why this exception? This provision of statute is the equivalent of a statement that the husband or wife has conditionally an interest in the property of the other to the extent necessary for their support, but has no further interest therein. In addition, then, to general equitable jurisdiction to enforce personal rights growing out of the marriage relation, we have conferred by statute a property interest as an additional matter for equitable regulation and cognizance. It would be unquestioned that a written agreement between husband and wife, dividing their property or otherwise granting such a property interest to one or the other, would be enforceable in equity; and no one would challenge the right of the court to entertain such an action, because the statute has not declared the form in which it should be maintained, usage having supplied that. And it is no violent stretch of equitable jurisdiction to assume authority to grant relief under this phase of the statute vesting in this plaintiff under certain conditions an enforceable interest to the extent of his support in his wife's property, real and personal.

In conclusion, then, we hold that, if there is no common law on the subject, supporting equitable jurisdiction and plaintiff's right to maintain this action against his wife, it is because at common law such an action would not arise. That the holdings of English courts of chancery of several hundred years ago are without force as founded upon different

conditions in every respect, as well as arising because of the divided jurisdiction of chancery with ecclesiastical courts, the latter unknown to our judicial system; that prior to statehood actions similar to this, but brought by the wife on identical grounds and in the absence of a statute so authorizing, were cognizable in equity, and are therefore properly maintainable at present without the aid of legislation; that no good reason exists in these days of equality of husband and wife to grant the wife a remedy and withhold the same from the other party to the marriage relation; and, lastly, that defendant's statutory duty to support plaintiff is not merely an obligation declared by statute, but is coupled with plaintiff's interest in his wife's property to the extent of his necessary support, to be determined by this equitable action for such purpose.

One other matter deserves consideration. Defendant urges that the interpretation of this court in State ex rel. Hagert v. Templeton, 18 N. D. 525, 25 L.R.A.(N.S.) 234, 123 N. W. 283, wherein this plaintiff was denied suit money and counsel fees pending his wife's action against him for divorce, and wherein the right of such alimony was denied, applies by parity of reasoning to an action of this kind. We fail to see the application. That was a case for divorce in which the legislature, by § 4071, has granted to the wife a right to require the husband to pay alimony pending suit, without making any alimony provision for the husband when sued for divorce by the wife. Following the universal holdings and aided by the familiar rule of statutory construction, this court held that the legislature, by granting the right expressly to the wife, necessarily limited alimony relief in divorce proceedings to such as so granted, and to the exclusion of such a right to the husband. Such holding is in line with decisions in divorce matters. The courts cannot made a ground for divorce, but are limited to the statute. By legislative acts courts are granted limited power to divorce matters and kindred or auxiliary proceedings, as alimony pending suit for divorce, an incident of the main divorce action, is regarded. Herein we are not considering any question of divorce or any incident of it. This same argument was advanced in Galland v. Galland, and is disposed of by the following from the opinion: "The main subject-matter of the statute was the regulation of divorce, and only as incidental to that subject the statute prescribes the power of the court in respect to alimony in that class

of cases. The legislature was not dealing with the general subject of alimony as an independent subject-matter of legislation, but only as one of the incidents of an application for divorce. It saw fit to define the power of the court over the allowance of alimony on an application for divorce, but was not considering the subject of alimony in any other class of cases. If it had provided that a writ of ne exeat or distringas might issue against a defendant in an action for divorce, it would scarcely be claimed by any one that this was equivalent to a declaration that such writs should not issue in any other class of actions. For the same reason, a provision for alimony in a suit for divorce is not to be considered as a declaration that alimony shall not be allowed in other actions." This action is founded upon a different provision of statute and under a different head of equitable jurisdiction. Defendant's contention is as unsound as would be an attempt to assert any claim arising out of that action as a bar against this proceeding.

Defendant questions the power of the court to order alimony pending the action. Where it appears that probable cause for the suit exists, the court may make such allowance, and include therein reasonable counsel fees to be incurred in prosecuting the suit, as an actual expense of the litigation. 21 Cyc. 1605; Clisby v. Clisby, 160 Ala. 572, 135 Am. St. Rep. 110, 49 So. 445; Decen. Dig. §§ 295, 298, 299.

As to the right to make provision for future maintenance also challenged by defendants, such is the main object of the action, the reasons for the granting of which are the reasons for equitable cognizance of this class of actions, and that full equitable relief may be administered as well as a multiplicity of suits avoided. Hence the court's decree in amount should be measured by the means of the defendant as well as by the requirements of the plaintiff, and by all general rules usually governing in the granting of permanent alimony in divorce decrees, including such injunctional relief against alienation of property to defeat the objects to be attained by the action as the court may, on showing, consider necessary. And we see no good reason why the property interest of plaintiff in all real property of the defendant, necessary to his support, may not be secured by decree awarding a lien thereon. Any and all relief granted, while in a sense permanent, is so only while the relative conditions of the parties remain unchanged, and the necessity therefor, the ability to support and the marriage relation itself, continues.

Hence, if plaintiff prevails, any relief granted as permanent relief must be subject to change or modification on application and for good cause shown.

The order appealed from is affirmed.

Honorable A. G. BURR, Judge of the Ninth Judicial District, sitting by request in place of Honorable D. E. MORGAN, Chief Justice at the time of hearing, who did not participate therein.