Winifred Margaret JOHNSON, Plaintiff
and Respondent,

v.

Duane DAVIS, as Guardian of Bennie O.
Johnson, and Bennie O. Johnson,
Defendants and Appellants.

No. 8188.

Supreme Court of North Dakota.

Feb. 24, 1966.

Stokes, Vaaler, Gillig & Warcup, Grand Forks, for defendants and appellants.

Fleck, Smith, Mather, Strutz & Mayer, Bismarck, for plaintiff and respondent.

TEIGEN, Judge.

This is an action by Winifred Margaret Johnson against Duane Davis, as guardian of Bennie O. Johnson, and Bennie O. Johnson. The district court of the First Judicial District, Traill County, North Dakota, entered judgment for the plaintiff. The defendants prosecute this appeal from that judgment and demand a trial de novo.

The plaintiff, Winifred Margaret Johnson, and defendant Bennie O. Johnson were married on September 16, 1955. They lived together in apparent harmony for about a year. Then on March 28, 1957, defendant Duane Davis was appointed as Bennie's guardian. Shortly after his appointment, Mr. Davis brought an action in district court to annul the marriage. The district court granted an annulment, which we set aside on appeal in Johnson v. Johnson, N.D., 104 N.W.2d 8. Since that opinion contains a detailed statement of background material, we limit our present discussion to those facts which are necessary to a determination of the issues now before us.

On September 1, 1960, the plaintiff commenced this action seeking permanent support, attorney's fees and expenses she had incurred in the annulment proceeding, and reasonable attorney's fees and costs for the prosecution of the present action. After the defendants had filed their answers, plaintiff moved the district court for temporary support and sufficient funds with which to prosecute this action during its pendency. This motion was granted by an order of the district court of October 18, 1960, which provided for temporary support pending the termination of the action on its merits of $150.00 per month, commencing November 1, 1960, and temporary attorney's fees and costs of $250.00. Temporary support payments were made pursuant to this court order through December, 1962. When the defendants thereafter refused to continue these payments, the plaintiff moved the district court to find the defendants guilty of contempt for fail-

ure to obey the court order of October 18, 1960. This motion was heard in conjunction with the trial on the merits on August 27, 1963, and denied.

The judgment of the district court, from which the present appeal is taken, granted the plaintiff permanent support of $150.00 a month, back support of $150.00 a month from January 1, 1963, to the date of judgment, and attorney's fees of $500.00 for her defense in the annulment action.

The issues advanced by the defendants in this appeal are as follows:

1. Does the court have jurisdiction in an action for support by a wife who is a nonresident and not residing in the county in which the action is brought?

2. Did the court err in setting the permanent support at $150.00 per month?

3. Does the court have jurisdiction in an action for support to enter judgment for back support?

4. Does the court have jurisdiction to render a judgment against the defendant husband for attorney's fees on behalf of the wife for services rendered to the wife in a separate and different action between husband and wife, in which action there was no allowance made by the court for attorney's fees?

The defendants first maintain that the district court of Traill County is without jurisdiction because the plaintiff was not a resident of that county when the action was commenced. She was residing apart from her husband in the city of Winnipeg, Manitoba, at the time. This contention is based upon Section 14–08–01 of the North Dakota Century Code, which provides, in part:

"Action against husband for support of wife and minor children—When maintained.—Any married woman may maintain an action *in the district court of the county in which she resides*

against her husband for failure on his part to provide for:

1. Her support; and

* * *." (Emphasis added.)

Insofar as subject-matter jurisdiction is concerned, the district courts of this state have such jurisdiction as is conferred upon them by Section 103 of the North Dakota Constitution and by Section 27–05–06 of the North Dakota Century Code. The latter section provides that district courts shall have "[p]ower to hear and determine all civil actions and proceedings * * *." It thus appears that district courts are clothed with jurisdiction to entertain suits of this nature. The only question which remains is, is Section 14–08–01 a jurisdictional curb, limiting suit by an aggrieved wife to the district court of the county in which she resides?

Section 14–08–01 relates to venue, not jurisdiction. Chapter 28–04, N.D.C.C., designates the venue at which particular actions shall be tried. Section 28–04–05, the only section pertinent hereto, provides, in part:

"Actions having venue where defendant resides.—In all other cases, except as provided in section 28–04–03.1, and subject to the power of the court to change the place of trial as provided by statute, the action shall be tried in the county in which the defendant or one of the defendants resides at the time of the commencement of the action. * * *"

■■ As a general rule, then, a defendant is entitled to have an action against him tried in the county in which he resides. We think the legislature intended Section

14–08–01, supra, as a matter of grace, creating an exception to the usual rule and thereby permitting a wife an additional venue for enforcing her right to support. We are led to this conclusion for the following reasons. In the first place, the language employed in the statute is permissive, not mandatory. It provides that "[a]ny married woman *may* maintain an action in the district court of the county in which she resides * * *." It does not state that she *must* or *shall* do so.

Second, in Hagert v. Hagert, 22 N.D. 290, 133 N.W. 1035, 38 L.R.A.,N.S., 966, this court entertained an appeal from a suit by a husband to compel his wife to support and maintain him. We held that the right to maintain an action for support exists as a matter of equitable jurisdiction independently of statute. We did not rest our decision upon this principle alone, however. We also noted that Section 4077, R.C.1905 (now Section 14–07–03, N.D. C.C.[1]) when coupled with Section 4078, R.C.1905 (now Section 14–07–04, N.D. C.C.[2]) gave a statutory property interest as an additional matter for equitable regulation and cognizance. We concluded that it was unnecessary to determine if Chapter 167, S.L.1890, currently Chapter 14–08, N.D. C.C., was in force, observing at pages 1039–1040 of the Northwestern Reporter:

"If it be in force, the statute adds nothing to the power of the court, the same being limited as construed by the opinion in Bauer v. Bauer [2 N.D. 108, 49 N.W. 418] to procedure only * *."

Finally, the defendants were personally served in Traill County, the county of their residence, and suit was likewise commenced there. We have held that a district court can obtain jurisdiction over a support action

---

1. "Duty to support.—The husband must support himself and his wife out of his property or by his labor. The wife must support the husband, when he has not deserted her, out of her separate property, when he has no separate property and he is unable from infirmity to support himself."

2. "Separate property—Rights and privileges.—Except as otherwise provided by section 14–07–03, neither the husband nor the wife has any interest in the property of the other, but neither can be excluded from the other's dwelling."

by service of a summons, as in other cases in equity. Bauer v. Bauer, 2 N.D. 108, 49 N.W. 418. Since a wife's cause of action for support is essentially personal and transitory in nature, George v. George, 23 A.2d 599, 20 N.J.Misc. 41, she may sue her husband wherever she can obtain personal service upon him. For this reason, as well as those discussed earlier, we conclude that the district court of Traill County had jurisdiction to hear and determine this matter.

The defendants next urge that the court erred in setting permanent support at $150.00 a month. Section 14–08–02, N.D.C.C., provides as follows:

"Power of court to render judgment. —If it shall appear to the court upon the trial of an action against a husband to provide support for his wife and minor children that the husband is able to support or contribute to the support of his wife and said children and that he neglects or refuses to perform his duty in that respect, the court may render such judgment as to the support by said husband of his wife and said children as shall be equitable in view of the circumstances of both parties."

In Hagert v. Hagert, 22 N.D. 290, 133 N.W. 1035, 38 L.R.A.,N.S., 966, we stated that the amount of support should be measured by the means of the defendant, as well as by the requirements of the plaintiff, and by all general rules usually governing in the granting of permanent alimony in divorce cases. And in Ruff v. Ruff, 78 N.D. 775, 52 N.W.2d 107, 111, we approved the following rule:

" 'In determining the question of alimony or division of property as between the parties, the court, in exercising its sound discretion, will consider the respective ages of the parties to the marriage; their earning ability; the duration of and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time, its value at that time, its income-producing capacity, if any, and whether accumulated or acquired before or after the marriage; and from all such elements the court should determine the rights of the parties and all other matters pertaining to the case.' "

See Nicholson v. Nicholson, N.D., 126 N.W 2d 904; Dahl v. Dahl, N.D., 97 N.W.2d 844; Anderson v. Anderson, N.D., 68 N.W. 2d 849; Fleck v. Fleck, 79 N.D. 561, 58 N.W.2d 765. In Fischer v. Fischer, N.D., 139 N.W.2d 845, we expanded the above rule to include "and such other matters as may be material."

Upon trial de novo on an appeal from a judgment, the Supreme Court must ascertain the facts from the record and, in making its determination, will give appreciable weight to the findings of the trial court. Bankers v. Bankers, N.D., 139 N.W.2d 143; Bolt v. Bolt, N.D., 134 N.W.2d 506; Belt v. Belt, 75 N.D. 723, 32 N.W.2d 674; Agrest v. Agrest, 75 N.D. 318, 27 N.W.2d 697. A reviewing court is reluctant to disturb the award of a lower court or to interfere in any way with the sound exercise of discretion by such court in determining the proper amount of support. Any successful attack upon such determination must be based upon an abuse of discretion, which abuse is never assumed but must be affirmatively established. Peterson v. Peterson, N.D., 131 N.W.2d 726; Bryant v. Bryant, N.D., 102 N.W.2d 800. Proximity to the parties makes the trial court ideally situated to effectively determine a matter of this nature. The trial court saw the parties and heard their testimony. As a reviewing court, we have no such vantage point. We must predicate our decision solely upon the "cold" record.

This marital merry-go-round has been plagued by intermeddling since its inception. The record demonstrates that the plaintiff is willing to live with her husband, and there is nothing to indicate that he is not similarly

disposed and that he would discharge his marital obligations were it not for outside interferences. This, however, does not absolve him of his duty to support her. From the fall of 1956 until November 1, 1960, the plaintiff received no support from him. The situation has been complicated by the fact that she is a citizen of Canada and had been permitted to remain in the United States by virtue of a temporary visa. This circumstance forced her to leave North Dakota in June, 1957. In order to support herself and a daughter by a previous marriage, she went to Winnipeg, Manitoba, where she was able to find work as a legal secretary. She worked on a steady, temporary basis and her income was from $200.00 to $250.00 a month. She testified that she had surgery for the removal of benign tumors, as a result of which she was confined to a hospital during most of 1958. After she had recuperated, she worked for a Jewish synagogue and for various attorneys in Winnipeg. When she was working, her income was from $200.00 to $250.00 a month.

In October, 1962, after obtaining a permanent visa, the plaintiff left Winnipeg and went to Los Angeles, California, where she found employment as a confidential secretary with an agency. She testified that she was "on call mostly" and that the work was "fairly steady." Her pay was "sometimes $300.00 and $350.00 a month."

Three weeks before the trial of this action the plaintiff worked part time for a law firm in Winnipeg. She testified that she was to return to her job in California on August 12, 1963. It appears that the trial of this action prevented a punctual return, and she was notified that her services were no longer required. The plaintiff testified that she supposed she would be able to find a steady job, but that her age is against her. At the time of trial, she was forty-six years old, some seventeen years younger than her husband.

Duane Davis, Bennie's guardian, testified that the guardianship estate leases 460 acres of land on a cash rental basis of $13.00 an acre, and that the lessee is paid $3.50 an acre for summer fallowing. From 80 to 120 acres are put in summer fallow annually. In addition to the rental income, the guardianship account receives dividends from elevator stocks which bring in an estimated average income of $30.00 a year.

Bennie is presently residing at the Lutheran Memorial Home in Mayville, North Dakota, where he has been since January, 1962. Davis testified that it costs $155.56 a month to maintain him there, excluding such items as cigarettes, drugs, and clothing.

According to the guardian's fifth annual report and account for the year March 31, 1961, to April 30, 1962, the rent and dividend income was $10,880.20. Disbursements for the same period amounted to $12,136.44, leaving a balance of $3,291.45 in the account. However, the record establishes expenditures were made during this reporting period in payment of debts accrued in former years. The sixth annual report and account for the year ending April 30, 1963, showed receipts of $10,533.79. Disbursements for the same period totalled $5,542.70, leaving a balance of $4,991.09.

■ It is apparent from the record, and the guardian so testified, that the income is not only sufficient to defray the expenses involved in the support and care of Mr. Johnson, but that the balance on hand increases from year to year. We have carefully examined the record and find that the trial court's award of $150.00 a month permanent support is equitable in view of the circumstances of these parties and that the trial court did not abuse its discretion.

■ The defendants also contend that the trial court did not have jurisdiction to enter a judgment for back support. We find no merit in this contention. Section 14–08–04, N.D.C.C., provides as follows:

"What payments made by husband pending action.—The court in its discretion may require the husband to pay any money necessary to enable the

plaintiff to prosecute the action and to support the plaintiff and her children during its pendency."

The plaintiff applied for and was granted temporary support by a court order of October 18, 1960. Payments were made pursuant to this order through December, 1962. When the defendants refused to continue payments thereafter, the plaintiff moved the court for an order finding the defendants guilty of contempt. This motion was heard in conjunction with the trial on the merits, at which time the court dismissed the contempt proceedings. The judgment provided that the defendants pay support of $150.00 a month from January 1, 1963, to date. By such judgment the court was merely enforcing its previous order of October 18, 1960. This situation is clearly distinguishable from cases involving retroactive application of support orders. See Heller v. Heller, N.D., 81 N.W.2d 124, and Hodous v. Hodous, 76 N.D. 392, 36 N.W.2d 554, 12 A.L.R.2d 1051.

■ Finally, the defendants urge that the court is without jurisdiction in this action to render judgment for attorney's fees and expenses incurred by the wife in the defense of the annulment action. The plaintiff argues that attorney's fees and expenses incurred by her in appealing the annulment judgment are necessaries for which the husband is liable and cites in support thereof Section 14–07–10, N.D.C.C. This statute provides that if the husband neglects to make adequate provision for the support of his wife "any other person in good faith may supply her with articles necessary for her support and may recover the reasonable value thereof from the husband." Plaintiff also cites 26 American Jurisprudence, Husband and Wife, Section 380, and some of the cases cited thereunder. This section states that although there is a certain amount of disagreement among the authorities, the general rule is that necessaries which a man is bound to provide his wife and for which he is liable in a proper case, include legal services for her protection. The

cases cited in support of the rule are actions brought by persons who rendered the services for the wife and not by the wife. These authorities are in harmony with the provisions of our statute, if we assume that "articles necessary for her support" include legal services for her defense in the annulment action.

The authorities cited and our statute do not support the contention of the plaintiff that the wife may recover from her husband money for the use and benefit of another to compensate him for legal services previously rendered to the wife. The question of whether one who performs such legal services for the wife may recover in his own right against the husband is not presented in this case. The statute relied upon vests the right in the person furnishing the articles necessary but does not vest the right in the wife. We, therefore, hold that the statute cited is not authority for such recovery.

We will now examine the question further. The plaintiff alleged in her complaint that she incurred attorney's fees and expenses of the reasonable value of $2,500 in the defense of the annulment action and prays judgment in that amount. The defendants in their responsive pleading allege the complaint does not state a claim upon which relief can be granted. The trial court refused to dismiss the complaint and the case was tried on its merits. The plaintiff, however, failed to introduce evidence in substantiation of her claim for attorney's fees and expenses. The trial court called this matter to the attention of counsel at the close of the trial but plaintiff made no motion to reopen or to be permitted to introduce additional evidence in support of the allegation of her complaint. Therefore, the plaintiff either elected to stand on the record as made or abandoned the claim. The trial court made no finding as to any amount incurred by the plaintiff for attorney's fees and expenses in the annulment action but in its conclusions of law it concluded the plaintiff should be allowed $500 attorney's fees "due in the annulment ac-

tion." This conclusion of law is not supported by a finding of fact nor by the evidence.

The appeal is here de novo upon all issues and thereby this court has the power, and it is made its duty, to review and weigh the evidence that was adduced upon the trial and transmitted to this court as a part of the record on appeal and to "find the facts for itself independently of the trial court's findings." Doyle v. Doyle, 52 N.D. 380, 202 N.W. 860; Merchants' National Bank v. Collard, 33 N.D. 556, 157 N.W. 488; Belt v. Belt, 75 N.D. 723, 32 N.W.2d 674.

We have carefully examined the record and find no evidence whatever to sustain a finding of any amount for attorney's fees in the annulment action. The record is entirely devoid of any such evidence. Therefore, even if we assume that the complaint states a cause of action, the plaintiff has failed in her proof thereof.

For the reasons set forth above, we find it was error for the trial court to allow judgment in favor of the plaintiff for attorney's fees in the annulment action.

The judgment is modified by striking therefrom the amount of $500 allowed as attorney's fees in the annulment action and, as modified, it is affirmed.

C. F. KELSCH, District Judge, and ERICKSTAD, J., concur.

BURKE, C. J., did not participate; STRUTZ, J., did not participate. Honorable C. F. KELSCH, District Judge of the Sixth Judicial District, sitting in his stead. KNUDSON, J., not being a member of the Court at the time of submission of this case, did not participate.